UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHARLENE SCHROEDER,

                           Plaintiff,           Case # 18-CV-1309-FPG

v.                                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

**INTRODUCTION**

On October 9, 2014, Plaintiff Charlene M. Schroeder protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act") and for Supplemental Security Income Disability under Title XVI of the Act, alleging disability beginning July 25, 2014. Tr.[1] 93, 103, 164-71. After the Social Security Administration ("SSA") denied her claim (Tr. 104-10), Plaintiff appeared, with counsel, at a hearing on June 2, 2017 before Administrative Law Judge Mary Mattimore (the "ALJ"). Tr. 26-83. On August 1, 2017, the ALJ issued an unfavorable decision. Tr. 11-21. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-7. Plaintiff then appealed to this Court.[2] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 16, 20. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further proceedings.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

[2] The Court has jurisdiction over this action under 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3).

## LEGAL STANDARD

### I. District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II. Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

# DISCUSSION

## I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found Plaintiff had not engaged in gainful activity since the alleged onset date. Tr. 13. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity and degenerative disc disease of the lumbar and cervical spines with radiculopathy. Tr. 13. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. Tr. 15. Next, the ALJ determined that Plaintiff retains the RFC to perform light work, with the following additional limitations: she could stand or walk for four to five hours in an eight-hour workday, but only one hour at a time; she could sit for six hours per workday but would need a sit/stand option every hour while on task; she could frequently reach overhead with her left upper extremity; she must avoid exposure to the cold; and she was able to occasionally climb, push, pull, stoop, crouch, and crawl. Tr. 15.

At step four, the ALJ found that Plaintiff had no relevant past work. Tr. 19. At step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform, and therefore, the ALJ concluded that Plaintiff is not disabled. Tr. 19-20.

## II. Analysis

Plaintiff advances two arguments in support of remand: (1) the ALJ failed to give good reasons for discounting the opinion of treating neurosurgeon Franco Vigna, M.D.; and (2) the ALJ erred in substituting her own lay opinion for the opinion of a medical source. *See* ECF No. 16-1 at 14-28. Because the Court agrees that the ALJ's treatment of Dr. Vigna's opinion was error, it does not reach Plaintiff's remaining arguments.

An ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."[3] 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but she must "comprehensively set forth [her] reasons" for doing so. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (the SSA "will always give good reasons" for the weight afforded to a treating source's opinion).

When a treating physician's opinion is not given controlling weight, an ALJ considers the following factors to determine how much weight it should receive: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The ALJ here failed to give good reasons for discounting the opinion of Plaintiff's treating neurosurgeon, Dr. Vigna, who opined on December 31, 2014, that Plaintiff could lift up to 15 pounds but could not perform any overhead work or any bending or twisting. Tr. 326.

The ALJ gave Dr. Vigna's opinion "little weight" because the limitations expressed in it were, "assessed in connection with a workers' compensation rating, which involved different standards than those used under the Regulations." Tr. 18. The ALJ also found that Dr. Vigna's opinion was "generally inconsistent with the overall record, including the claimant's lack of

---

[3] These regulations were applicable at the time the Plaintiff filed her claim.

distress, normal muscle strength, normal gait, history of conservative treatment, and the extent of daily activities." Tr. 18. These are not sufficiently good reasons. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.") (quoting another source).

First, although "disability opinions . . . offered for Workers' Compensation purposes . . . [are] not entitled to any significant weight" in a Social Security proceeding, *Pfleuger v. Comm'r of Soc. Sec.*, No. 18-CV-780, 2020 WL 1061490, at *6 (W.D.N.Y. Mar. 5, 2020), it is not clear from the record that Dr. Vigna's opinion here was offered for purposes of Workers' Compensation. While the opinion references a workplace injury and Plaintiff's brief indicates that Dr. Vigna assessed a "66% temporary impairment . . . for the purposes of Workers' Compensation" (ECF No. 16-1 at 17), nowhere does the opinion state that it was rendered for a Workers' Compensation claim. Tr. 325-26. Furthermore, Plaintiff saw Dr. Vigna for several months after he offered his initial opinion and treatment records from those visits are consistent with his opinion. Tr. 318-20, 321-23. Dr. Vigna's treatment records from nearly three months later explain that Plaintiff suffered a work-related injury two years earlier and that her left shoulder injuries appear to be a result of that work-related injury, yet again, these records do not confirm that they were rendered for purposes of Workers' Compensation. Tr. 319. Given the ambiguity, the ALJ should have, at the very least, re-contacted Dr. Vigna to clarify his findings and the purposes for which they were rendered. *See Ballard v. Comm'r of Soc. Sec.*, No. 19 CIV. 673 (PED), 2020 WL 1031908, at *17 (S.D.N.Y. Mar. 2, 2020) (holding that, while SSA regulations do not strictly *require* ALJs to recontact, they nevertheless "contemplate the ALJ recontacting treating physicians when the additional information needed is directly related to that source's medical opinion." (quoting other sources)); *Morales v. Comm'r of Soc. Sec.*, No. 15-CV-6734 (ENV), 2020 WL 587111, at *5

5

(E.D.N.Y. Feb. 6, 2020) ("Even under the current amended regulations, which give an ALJ more discretion to determine the best way to resolve the inconsistency or insufficiency based on the facts of the case, the first option is still to recontact the treating physician." (quoting another source)).

Even if Dr. Vigna's opinion was rendered for a Workers' Compensation claim, the ALJ should not have disregarded all of it. While "an ALJ need not give controlling weight to a treating physician's opinions concerning a claimant's 'disability' in connection with a Worker's Compensation proceeding," *DeRosia v. Colvin*, No. 16-CV-6093P, 2017 WL 4075622, at *20 (W.D.N.Y. Sept. 14, 2017) (quoting another source), the ALJ still "must consider the medical opinions underlying and informing a treating physician's disability assessment." *Mercado v. Colvin*, No. 15 CIV. 2283 (JCF), 2016 WL 3866587, at *15 (S.D.N.Y. July 13, 2016) (holding that the rejection of a treating physician's opinion just because it was rendered for workers' compensation purposes was "a legally insufficient reason to categorically disregard" it, and that, while such an opinion "is not entitled to controlling weight," it also "cannot be ignored"); *see also Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 492 (S.D.N.Y. 2018) (holding "that an ALJ may not reject a treating source's opinions solely" because they were rendered in the workers' compensation context); *Colley v. Astrue*, No. 1:06-CV-0749LEK/VEB, 2009 WL 1392535, at *10 (N.D.N.Y. May 12, 2009) ("It would be illogical to hold that a treating physician's opinions are not entitled to weight simply because he had provided them in a workers' compensation context.").

Here, Plaintiff admits that the portion of the ALJ's opinion discussing percent total disability, even if related to a Workers' Compensation claim, would not be entitled to controlling weight as it reaches an ultimate issue reserved for the Commissioner. ECF No. 16-1 at 17. But Dr. Vigna also opined that Plaintiff could not lift 15 pounds and could not reach overhead. These opinions are not dependent on any specific disability standard, they are observations of a treating

physician,[4] and it was error for the ALJ to summarily discount them. *Mancuso v. Comm'r of Soc. Sec.*, No. 14-CV-0114 MKB, 2015 WL 1469664, at *21 (E.D.N.Y. Mar. 30, 2015) ("[T]he fact that Dr. Clarke submitted paperwork supporting Plaintiff's worker's compensation claims alone does not undermine his medical opinions as to the nature and severity of Plaintiff's impairments, particularly to the extent Dr. Clarke's opinion is consistent with other medical evidence in the record.").

Plaintiff also contends that the ALJ erred in concluding that Dr. Vigna's opinion was "generally inconsistent with the overall record, including the claimant's lack of distress, normal muscle strength, normal gait, history of conservative treatment, and the extent of daily activities." Tr. 18. Again, the Court agrees.

Dr. Vigna opined that Plaintiff would not be able to lift more than 15 pounds and could not complete overhead work or repetitive bending or twisting. The Court fails to see how records of Plaintiff's "lack of distress, normal muscle strength, [or] normal gait" are inconsistent with Plaintiff's ability to bend, pick up objects, twist, or reach overhead. To be sure, one may walk normally, have typical strength, not be in acute stress, and yet still have back issues preventing lifting, twisting, or reaching overhead—the findings are not mutually exclusive.

Still, Dr. Vigna's opinion is not inconsistent with the rest of the record. For example, Dr. Vigna reviewed X-ray and MRI imaging and detected "slightly decreased disc heights with some spondylosis at C4-5, C5-6, C6-7" and "disc bulging at C4-5, C5-6 and C6-7." Tr. 326. Dr. Vigna's opinion is consistent with his later treatment records, reproducing and confirming Plaintiff's shoulder pain and neck pain. Tr. 318-19, 321-22. It is also consistent with numerous records from Plaintiff's treating physical therapist from 2015 to 2017 indicating that Plaintiff had restricted

---

[4] The ALJ admitted that Dr. Vigna was "a treating provider." Tr. 18.

range of motion in her shoulders and neck and problems moving her head. Tr. 341-65. Imaging in the summer of 2016 similarly reveals herniation at C5-6 and bulges at L4-5 and L5-S1 causing subtle contact with nerve roots. Tr. 388-91.

Perhaps most tellingly, Dr. Vigna's opinion is consistent with an opinion from a one-time consultative evaluator Samuel Balderman, M.D., to which the ALJ gave "[g]reat weight." Tr. 18. Dr. Balerman evaluated Plaintiff on December 15, 2014, and concluded that Plaintiff had "mild limitation with frequent changes in position of the head." Tr. 315. This opinion demonstrates, as opined by Dr. Vigna, that Plaintiff had some neck and upper extremity limitations. Yet despite being the only functional limitation contained in the opinion, the ALJ failed to include any attendant limitation for moving the head or upper body into the RFC. Even worse, Dr. Balderman warned that the "MRI of the cervical spine should be reviewed for clinical confirmation." Tr. 315. Dr. Vigna reviewed that MRI and based his opinion on it. Still, the ALJ rejected Dr. Vigna's opinion in favor of Dr. Balderman's opinion, when the two opinions complemented one another.

Finally, Dr. Vigna's opinion is not inconsistent with the extent of Plaintiff's daily activities. For example, Plaintiff testified that she walks up the stairs in her apartment and can wash dishes and clean, so long as it does not involve "lifting" or "bending." Tr. 36, 50-51. Such daily activities are actually consistent with Dr. Vigna's opinion.

The ALJ's failure to properly weigh Dr. Vigna's opinion was not harmless error. Contrary to the opinions from Dr. Vigna and Dr. Balerman, the RFC contained *no* limitation for reaching overhead, bending, or picking up objects over 15 pounds. Indeed, the RFC would have allowed Plaintiff to "frequently" reach overhead and perform "light work" (Tr. 15), which requires "lifting no more than *20 pounds* at a time with frequent lifting or carrying of objects weighing up to 10

8

pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b) (emphasis added). Consequently, remand is required.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 16) is GRANTED, the Commissioner's motion for judgment on the pleadings (ECF No. 20) is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: April 10, 2020
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court